IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMES B., JR.,** : | CIVIL ACTION |
| Plaintiff, : | |
| : | |
| vs. : | NO.   23-cv-3644 |
| : | |
| **MARTIN O'MALLEY,** : | |
| **Commissioner of Social Security,** : | |
| Defendant. : | |

**MEMORANDUM OPINION**

**LYNNE A. SITARSKI**
**UNITED STATES MAGISTRATE JUDGE**                                                                    **June 21, 2024**

Pending before the Court is the Commissioner of Social Security's Contested Motion to Remand to the Social Security Administration (SSA) for additional proceedings, pursuant to the fourth sentence of 42 U.S.C. § 405(g).  Plaintiff James B., Jr., opposes the motion and requests that the Court remand the case for an award of benefits.  As explained below, the Court grants the Commissioner's motion, remands the case to the SSA and denies Plaintiff's request for payment of benefits at this time.

I.      **PROCEDURAL HISTORY**

On July 19, 2011, Plaintiff protectively filed for supplemental security income alleging disability beginning June 5, 2010.  (R. 125-33).  Plaintiff's application was denied, and Plaintiff requested a hearing before an Administrative Law Judge (ALJ).  (R. 66-71, 83-85). Plaintiff, represented by counsel, and a vocational expert (VE) testified at the April 30, 2013 administrative hearing, at which he also amended his disability onset date to December 6, 2012. (R. 15, 23-65).  On October 1, 2013, ALJ Alan Sacks issued a decision unfavorable to Plaintiff,

finding that he had no severe impairments and that his testimony was not fully credible. (R. 15-19). Plaintiff appealed the ALJ's decision, but the Appeals Council denied Plaintiff's request for review on February 20, 2015. (R. 1-6). After filing suit in federal court, the matter was remanded on September 8, 2016, and on October 4, 2017, ALJ Christine McCafferty held a second hearing. (R. 2196-2230, 2283-94, 2296-98, 2726). On December 18, 2017, she, too, issued a decision unfavorable to Plaintiff, but after another federal court appeal the matter was remanded a second time, for the ALJ to reconcile an unresolved inconsistency concerning the VE's testimony. (R. 2166-80, 2715-30). Following a second hearing before ALJ McCafferty (third hearing overall) on September 11, 2019, she again issued a decision unfavorable to Plaintiff. (R. 2648-94). On appeal to federal court, the matter was remanded because ALJ McCafferty's appointment was constitutionally invalid when she heard the case. (R. 3195-99 (citing *Cirko v. Comm'r of Soc. Sec.*, 948 F.3d 148, 152 (3d Cir. 2020)); *see also* 3200-04).

On remand, ALJ Robert Ryan held a hearing on March 14, 2023, and issued a decision unfavorable to Plaintiff on May 30, 2023. (R. 3116-70). On September 19, 2023, Plaintiff initiated this suit challenging the ALJ's decision by filing a complaint. (Compl., ECF No. 1). On September 25, 2023, Plaintiff consented to my jurisdiction pursuant to 28 U.S.C. § 636(C), and on February 4, 2024, Plaintiff filed a Brief and Statement of Issues in Support of Request for Review. (Consent, ECF No. 4; Pl.'s Br., ECF No. 14). Following review of the brief, the Commissioner proposed remanding the matter for the ALJ to further evaluate the evidence, further assess Plaintiff's residual functional capacity (RFC), obtain medical expert evidence, conduct another hearing and issue a new decision, but Plaintiff declined. (Memo. in Supp. of Mot. to Remand, ECF No. 17, at 3). Accordingly, on April 3, 2024, the Commissioner filed the instant motion to remand the matter for further proceedings, and on April 9, 2024, Plaintiff filed

2

his response asking for remand for an award of benefits instead. (Mot. to Remand, ECF No. 17; Resp. to Mot. to Remand, ECF No. 18).

## II. LEGAL STANDARD

Pursuant to the fourth sentence of 42 U.S.C. § 405(g): "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Under this authority, a reviewing court, in its sound discretion, may remand for further proceedings or for an award of benefits directly. *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984); *Diaz v. Berryhill*, 388 F. Supp. 3d 382, 390 (M.D. Pa. 2019) (citing *Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 357-58 (3d Cir. 2008)). In making this determination, the court is guided by consideration of two factors:

> First, whether there has been an excessive delay in the litigation of the claim which is not attributable to the claimant; and second, whether the administrative record of the case has been fully developed and substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits.

*Diaz*, 388 F. Supp. 3d at 391.

Whether a delay is excessive requires the court to consider both the amount of time that has passed during the pendency of the matter and the number of prior appeals and remands. *Id.* Although no bright-line rule exists, many courts have found delays excessive when they last five or more years and involve one or more appeals and/or remands. *See, e.g.*, *Brownawell*, 554 F.3d at 358 (eight years and two prior remands); *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000) (ten years and two appeals); *Woody v. Sec'y of Health & Human Servs.*, 859 F.2d 1156, 1162 (3d Cir. 1988) (eight years and two remands); *Podedworny*, 745 F.2d at 223 (five years and two appeals); *Nance v. Barnhart*, 194 F. Supp. 2d 302, 322 (D. Del. 2002) (seven years to

3

process first appeal); *Schonewolf v. Callahan*, 972 F. Supp. 277, 291 (D.N.J. 1997) (six years and two remands).  The second factor requires that "the administrative record of the case has been fully developed and [that] substantial evidence on the record as a whole indicates that the [c]laimant is disabled and entitled to benefits." *Gilliland v. Heckler*, 786 F.2d 178, 184 (3d Cir. 1986).

If both the first and second factor have been met, remanding for further proceedings before an ALJ serves no purpose "because the administrative proceeding would result only in further delay in the receipt of benefits."  *Podedworny*, 745 F.2d at 222.  However, "except in rare circumstances," the court should remand the matter for further proceedings "[i]f the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it . . . ." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985).  Significantly, in making this determination, "[t]he reviewing court is not generally empowered to conduct a *de novo* inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry." *Id.*

### III.   DISCUSSION

#### A.   The Parties' Positions

After setting forth the foregoing background law, including the two-part test enunciated in *Diaz*, Plaintiff argues that the first factor, excessive delay, is unquestionably established by the lengthy administrative and district court procedural history of this case, especially where the ALJs have allegedly made "the same errors upon remand."[1]  (Pl.'s Br., ECF No. 14, at 22-23).

---

[1] Because Plaintiff addressed in his opening brief the propriety of remanding for an

4

He claims that the SSA has known since August 2016 that a consultative psychological evaluation needed to be ordered, and since January 2021 that a full evaluation of all medical opinion evidence was required, yet the ALJs have failed to do either. (*Id.* at 23 (citing R. 2288, 3202-03)). He also cites a few cases for the proposition that excessive delay is a consideration in whether to award benefits because of the impact of an improperly delayed award. (*Id.* at 24-25 (citing *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004); *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000); *Lindner v. Sullivan*, 902 F.2d 1263 (7th Cir. 1990); *Cole v. Sec'y of Health & Human Servs.*, 820 F.2d 768, 775-776 (6th Cir. 1987))). Turning to the second factor, Plaintiff notes that the *Diaz* court remarked on the "voluminous" nature of the 1698-page record as a substantial consideration in finding the administrative record to be fully developed in that case and highlights that the record here contains 4840 pages from four administrative hearings, making it "difficult to imagine how this case could be more developed . . . ." (*Id.* at 23). He maintains that this record establishes a right to benefits because all medical sources have purportedly set forth work-preclusive limitations. (*Id.* at 24 (citing 2624-38, 2639-43, 2644-47, 2971-73, 3112-15)).

In his motion, the Commissioner observes that courts have remanded Social Security appeals for further proceedings rather than an award of benefits even where the case has been pending for several years and there have already been multiple remands. (Memo. in Supp. of Mot. to Remand, ECF No. 17, at 4-5 (citing *Henderson v. Colvin*, No. 12-cv-05316, 2014 WL 5431111, at *13-14 (E.D. Pa. Oct. 27, 2014) (nine-year-old initial application, six hearings, five

---

award of benefits rather than for further proceedings, and the Commissioner responds to these arguments in his motion, the Court begins its summary of the parties' stances on this issue with Plaintiff's filing, even though the Commissioner is the movant. (*See* Resp. to Mot. to Remand, ECF No. 18, at 1 (noting that this issue was addressed at pages 21 through 24 of Plaintiff's opening brief)).

ALJ decisions and four district court appeals); *Woody v. Astrue*, No. 2:08-33, 2009 WL 799657, at *29 (W.D. Va. Mar. 24, 2009) (eight-year-old initial application and two remands))).  Citing Third Circuit caselaw for the proposition that district courts are not permitted to make factual determinations in Social Security matters, he asserts that further proceedings are required because an ALJ, rather than me, should be the one to fully develop the record by obtaining and reviewing evidence from a medical expert and by evaluating the opinion of Paul Sedacca, M.D.  (*Id.* at 4-5 (citing *Chandler v. Comm'r Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011); *Grant v. Shalala*, 989 F.2d 1332, 1338 (3d Cir. 1993))).  He acknowledges that ALJ Ryan failed to address this brief opinion (within a nearly 5000-page record, he notes) but maintains that an award of benefits remains improper because the overlooked opinion is nevertheless consistent with the ALJ's RFC assessment: that is, Dr. Sedacca opined that Plaintiff lacked full use of his neck and lower back without specifying any limitations, and the ALJ determined that Plaintiff can engage in only light work, which constitutes a substantial restriction on the use of these body parts.  (*Id.* at 5 (citing R. 2971-73, 3125)).

      The Commissioner observes that Plaintiff does not dispute that his physical impairments, although found to be severe by ALJ Ryan, do not meet any listing and contends that the determination that his mental impairments were non-severe was supported by substantial evidence cited by the ALJ, including "very minimal" mental health treatment, normal mental status examinations, and Plaintiff's activities of daily living, like taking paralegal classes, working in the jail law library, socializing, and exercising at the gym.  (*Id.* at 5-6).  The Commissioner refutes the assertion in Plaintiff's brief that his mental impairments should have been deemed severe based on his one year of mental health treatment out of a now 14-year alleged disability period, and he cites Plaintiff's contention therein that a consultative

6

psychological examination was warranted as reflective of the need to remand this matter for further factual development. (*Id.* at 6; *see also* Pl.'s Br., ECF No. 14, at 14-16). He maintains that the record in its current form does not establish a right to benefits throughout this entire period, as reflected by Plaintiff's own suggestion that ALJ Ryan should have considered whether he was disabled for any 12-month period following his December 2012 gunshot wounds and August 2015 and July 2016 motor vehicle accidents. (Memo. in Supp. of Mot. to Remand, ECF No. 17, at 6; *see also* Pl.'s Br., ECF No. 14, at 12-14). He points out that Plaintiff's application for benefits alleges disability starting in 2010 (despite no work activity since 1990) based on a broken hand and chronic pain, but Plaintiff now submits that the ALJ should have considered whether he was disabled for shorter durations based on his injuries from the above-described events. (Memo. in Supp. of Mot. to Remand, ECF No. 17, at 6 (citing R. 66, 144-45, 3457-58); *see also* Pl.'s Br., ECF No. 14, at 12-14). The Commissioner asserts that ALJ Ryan adequately addressed these injuries when he acknowledged Plaintiff's use of a colostomy bag for nine months following his gunshot wounds and his August 2016 MRIs showing some degeneration following the accidents but also noted the lack of any evidence to support Plaintiff's claims of fecal incontinence, the two-year gap in pain management interspersed between the gunshot wounds and first accident, the lack of severe findings in the MRIs, and Plaintiff's improvement with physical therapy and medication following the accidents. (*Id.* at 6-7 (citing R. 2493, 2503, 3122, 3129, 3131-32)).

Additionally, the Commissioner denies Plaintiff's claim that the ALJs have continued to make the same errors throughout the administrative proceedings, observing that the basis for remand has ranged from the need for a physical consultative examination (first remand) to an unresolved conflict between the VE's testimony and the *Directory of Occupational Titles*

(second remand) to a violation of the Appointments Clause (third remand).  (*Id.* at 7 (citing 2288, 2624-28, 2653, 2720) (case citations omitted)).  The Commissioner points out that despite ALJ McCafferty also failing to mention Dr. Sedacca's short letter-opinion in the third administrative decision, Plaintiff did not raise the issue until the instant federal litigation challenging the fourth administrative decision, nor did he mention the letter or argue it constituted a medical opinion at the most recent administrative hearing in front of ALJ Ryan.  (*Id.* at 7-8 (citing No. 2:19-cv-5969 (E.D. Pa. May 22, 2020) (ECF No. 11))).  Rather, he waited until his appeal to this Court to do so.  (*Id.* at 8).  For these reasons, the Commissioner asserts that Plaintiff raises mere "technical deficiencies" in ALJ Ryan's decision and that he suggests, at most, that he was disabled for only short periods of the lengthy alleged disability period, making an award for the full period at issue unjustified by either the evidence or Third Circuit/Supreme Court caselaw.  (*Id.* at 8).  Accordingly, he asks that the matter be remanded for an ALJ to further evaluate Dr. Sedacca's opinion, obtain evidence from a medical expert, further assess the RFC, hold a new hearing and issue a new decision.  (*Id.*).

In Plaintiff's response to the Commissioner's motion, he adds that the Commissioner does not explain why the ALJs have never evaluated Dr. Sedacca's opinion or ordered medical expert evidence.  (Resp. to Mot. to Remand, ECF No. 18, at 1).  He posits that the Commissioner's request for a remand for further proceedings would only provide the SSA "yet another opportunity to commit legal error and deny benefits to this indigent claimant."  (*Id.*).  He observes that the SSA has had notice of the possible need for a consultative mental examination since August 2016 when Magistrate Judge Timothy Rice issued a Report and Recommendation regarding the need for ALJ Sacks either to have ordered one or to have found Plaintiff's mental impairments severe.  (*Id.* at 2 (citing R. 2283-94)).  He also notes that ALJ McCafferty could

have ordered the examination upon remand but instead cast doubt on its significance, declaring that she would not accord it controlling weight anyway because it was "a one-time evaluation by a doctor that's never seen him before, never will see him again, and may or not give that thorough an examination." (*Id.* at 2 (citing R. 2203-05)). He claims that it is only now, in the motion to remand, that the SSA asserts that a consultative examination is necessary, and without specifying what type is required or why. (*Id.*). He reminds the Court that he has not requested an examination. (*Id.*). He maintains that an award of benefits is justified based on treating psychologist George Gazella's opinion, "the only mental health opinion of record," and that no further development as to his mental impairments is necessary. (*Id.*).

Moreover, Plaintiff points out that the SSA was on notice that it must thoroughly explain its analysis of medical opinions in the record as directed by 20 C.F.R. § 416.927 and the Appeals Council's remand following ALJ McCafferty's second decision referencing her failure to do so. (*Id.* at 3). However, ALJ Ryan failed to address Dr. Sedacca's opinion, as the Commissioner concedes, even though his evaluation of the medical opinions was "a critical issue" in the matter. (*Id.* (citation omitted)).

Plaintiff disputes that the ALJs have committed different errors on each remand, claiming that they failed "at least twice" to evaluate the medical opinions and to fully develop the record as instructed by the Appeals Council and/or district court. (*Id.*). He adds that, in any event, "the fact that SSA keeps finding new ways to delay Mr. B.'s entitlement to benefits he desperately needs is hardly an argument in their favor." (*Id.*). He dismisses the Commissioner's contention that Dr. Sedacca's opinion constitutes only a miniscule portion of the sizeable record as "a red herring at best" because the Commissioner acknowledges that the ALJ's disregard of it nonetheless constitutes a legal error requiring remand, rendering immaterial "the 'minimal'

9

nature of the error." (*Id.* (citation omitted)).  Pointing out that he consistently argued in his opening brief for an award of benefits, he denies that his suggestion therein that further factual development was appropriate precludes him from seeking remand for payment of benefits only.  (*Id.* at 4 (citations omitted)).

In conclusion, Plaintiff reiterates his reasons for opposing a remand for further proceedings: (1) excessive delay not attributable to him; (2) similar errors made by the ALJs upon each remand; (3) a complete record; and (4) all medical opinions of record being consistent with disability.  (*Id.* at 4).

**B.     Analysis**

**1.     Excessive Delay**

The Commissioner does not dispute that this matter has been subject to an excessive delay not attributable to Plaintiff.  Plaintiff filed his application for benefits nearly 13 years ago, and since that time there have been four hearings, four ALJ decisions, three federal court remands, and now four federal court appeals.  Accordingly, there is no question that the first factor has been established.  *See, e.g., Brownawell*, 554 F.3d at 358 (finding shorter delay with fewer appeals/remands excessive); *Morales*, 225 F.3d at 320 (3d Cir. 2000) (same); *Woody*, 859 F.2d at 1162 (same); *Podedworny*, 745 F.2d at 223 (same); *Nance*, 194 F. Supp. 2d at 322 (same); *Schonewolf*, 972 F. Supp. at 291 (same).

**2.     Substantial Evidence of Disability**

Nonetheless, whether this matter has been excessively delayed is not the end of the inquiry.  The Court must also "determine whether substantial evidence dictates a finding that the claimant is disabled." *Shaffer v. Kijakazi*, No. 22-628-SRF, 2023 WL 2968114, at *3 (D. Del. Apr. 17, 2023) (citing *Podedworny*, 745 F.2d at 221-22).  It does not.

### a. Physical Impairments

Plaintiff argues that the opinions of three medical sources compel the conclusion that he had disabling physical impairments: those of (1) the consultative examiner, Mark Zibelman, M.D.; (2) the treating primary care provider Cheryl Branon, D.O.; and (3) a reviewing physician, Dr. Sedacca. (Pl.'s Br., ECF No. 14, at 7-11).

### i. Dr. Zibelman

Significant impairments recorded in Dr. Zibelman's November 2017 consultative examination report included a severely antalgic gait requiring use of a cane; the inability to walk on heels or toes; the ability to squat only 10 percent; limited range of motion throughout his body; "not intact" hand and finger dexterity, particularly on the left; sensory deficits in the upper left extremity; the inability to carry 10 pounds more than frequently or 20 pounds more than occasionally; the inability to sit, stand and walk for a total of eight hours in a workday; and various postural limitations. (R. 2624-38). However, ALJ Ryan adequately explained his decision not to credit Dr. Zibelman's opinion. First, he noted that Dr. Zibelman provided only "minimal explanation" to support his findings, but even this characterization may have been overly generous. (R. 3133). At eight different points on the opinion form, it directed the medical professional completing the form to "[i]dentify the particular medical findings (i.e., physical exam findings, x-ray findings, laboratory test results, history, and symptoms including pain, etc.) which support your assessment or any limitations and why the findings support the assessment" or used similar language. (R. 2629-34). Dr. Zibelman left every such section blank. (*Id.*). Such check-the-box forms with no narrative explanation constitute "weak evidence at best." *Mason v. Shalala*, 944 F.2d 1058, 1065 (3d Cir. 1993); *see also* 20 C.F.R. § 416.927(d)(3). "[W]here these so-called 'reports are unaccompanied by thorough written reports, their reliability is suspect.'"

*Mason*, 944 F.2d at 1065 (quoting *Brewster v. Heckler*, 786 F.2d 581, 585 (3d Cir. 1986)).

Second, ALJ Ryan concluded that the opinion was "not consistent with the medical evidence as a whole." (R. 3133). Noting that Plaintiff's presentation at the consultative examination was "completely aberrant" as compared to his prior medical history, ALJ Ryan explained:

> [T]he claimant showed up with a cane and walked with a severely antalgic gait but did not do so at any other time during the lengthy period covered by this case. He also showed some weakness and impaired use of his left hand when everywhere else it was noted that he had equal and unimpaired grip strength (16F). Specifically, his primary care provider, emergency room notes, and incarceration records do not indicate a gait disturbance or use of a cane or other assistive device (3F6, 11F, 25F, 26F26, 28F92, 195, 347, 450, 29F84, 132, 196, 242, 306, 440). Further, left hand deficits were also not documented in the record to the extent noted at the consultative exam. The claimant had little treatment for it during the relevant period and was often observed to have equal and unimpaired grip strength (3F6, 27F11, 29F261, 276. 429).

(R. 3133).

Because substantial evidence exists to support ALJ's Ryan's conclusions regarding the deficiencies in Dr. Zibelman's opinion, he was not required to credit the opinion or account for the limitations identified therein when formulating Plaintiff's RFC.

### ii.   Dr. Branon

Plaintiff observes that Drs. Zibelman and Branon described similar limitations in their opinions. (Pl.'s Br., ECF No. 14, at 9). Additional significant limitations set forth in at least one of Dr. Branon's two opinions (from November 2017 and January 2019) included greater lifting, postural and environmental restrictions; the need to shift positions at will; being off-task 25 percent or more of the workday; being absent more than four days per month; and the need for occasional unscheduled breaks. (R. 2644-47; 3112-15). However, the ALJ concluded that Dr. Branon's assessment, like Dr. Zibelman's, was "not consistent with the medical evidence of

record . . . ."[2] (R. 3134). He again pointed out that clinical examination findings were "minimal," with providers usually observing no strength or sensation deficits, gait abnormalities, or need to use an assistive device. (*Id.* (citing Exs. 3F6, 11F, 25F, 26F26, 27F11, 28F92, 195, 347, 450, 29F84, 132 196, 242, 306, 440)). He added that Plaintiff also only received "sporadic," "minimal and conservative treatment" for the issues with his cervical and lumbar spine and left hand, consisting primarily of pain management with some physical therapy. (*Id.*); *see also Morales v. Comm'r of Soc. Sec.*, 799 F. App'x 672, 676 (11th Cir. 2020) ("A conservative treatment plan tends to negate a claim of disability.").

Regarding Plaintiff's pain management, in particular, the ALJ elaborated elsewhere in the decision that Plaintiff had "significant gap[s]" in treatment between 2013 and 2015, throughout 2018, and during the first half of 2022. (R. 3131-32). He also highlighted "instances of narcotic drug seeking behavior" in the record, including notations from medical providers that Plaintiff should be weaned off pain medications, that he had been counseled "many times" that he would be provided no additional narcotics, and that in one instance Plaintiff did not want to be admitted

---

[2] ALJ Ryan further observed that Dr. Branon had inadequately supported her opinions, as he similarly concluded as to Dr. Zibelman's support for his opinions. (R. 3134). However, it bears noting that, unlike Dr. Zibelman, Dr. Branon did not simply leave the portions of the forms calling for supporting explanation blank, but instead identified aspects of Plaintiff's medical history that she believed corroborated her findings. (R. 2647, 3115). Even if the ALJ erred in finding Dr. Branon's opinion unsupported on this basis, this error was harmless because, as set forth above, substantial evidence supports his conclusion that it was inconsistent with the remainder of the record evidence. *See Alexander v. Saul*, 817 F. App'x 401, 404 (9th Cir. 2020) ("However, the error [discrediting the doctor's opinions on the factually incorrect basis that he relied on the claimant's self-reported pain allegations] was harmless because the ALJ's decision was based on other specific and legitimate reasons that are supported by substantial evidence in the record.") (citing *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004)); *Whitten v. Soc. Sec. Admin.*, 778 F. App'x 791, 796 (11th Cir. 2019) ("This was error [discounting Dr. Bentley's mental opinion because he did not mention that the claimant received her GED], but it was harmless because the ALJ gave other reasons—all supported by substantial evidence—for discounting Dr. Bentley's opinion.") (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)).

at the emergency room after being told that no narcotics would be provided. (*Id.* (citing Exs. 3F8, 4F20, 6F3, 9F20)). Additionally, ALJ Ryan cited instances in which Plaintiff had been advised that "no reason" existed for his allegedly ongoing pain. (*Id.* (citing Ex. 6F3, 4F20, 9F20)).

Plaintiff points to evidence tending to support a contrary determination, including the results of physical examinations and an EMG, complaints of muscle spasms, and a 2015 prescription for Oxycodone. (Pl.'s Br., ECF No. 14, at 8-9). However, the question is whether substantial evidence supports the ALJ's decision, not whether he might have reached a contrary determination based on the record. *See Simmonds*, 807 F.2d at 58 ("While there is other evidence in the record that could support a finding of disability . . . , our inquiry is not whether the ALJ could have reasonably made a different finding based on this record. Rather, we must review whether the ALJ's actual findings are supported by substantial record evidence."). In light of the explanations given and evidence cited by the ALJ, he was not required to accept the disabling restrictions proffered by Dr. Branon, and thus an award of benefits is not mandated on the basis of this opinion.

### iii. Dr. Sedacca

Thirdly, Plaintiff points to the opinion of Dr. Sedacca, overlooked by the ALJ, as requiring a remand for an award of benefits rather than for additional proceedings. (Pl.'s Br., ECF No. 14, at 7, 11). He observes that the ALJ adopted no specific limitations regarding reaching or Plaintiff's use of his neck, despite the purported fact that the opinion "contained limitations on neck and back movement . . . ." (*Id.* at 11). The Commissioner refutes the suggestion that the opinion proffered any specific limitations and notes that the ALJ limited Plaintiff to light exertional work with only occasional handling, fingering and feeling with the

upper extremities.  (Memo. in Supp. of Mot. to Remand, ECF No. 17, at 5 (citing R. 2971, 2973, 3125)).

The Court has reviewed Dr. Sedacca's opinion, and it is unclear what functional limitations he believes Plaintiff has.  Notably, Plaintiff himself does not specify the restrictions purportedly proffered in the opinion.  Although Dr. Sedacca clearly opines that Plaintiff's neck and lower back injuries "constitute a serious and permanent impairment/loss of bodily function" depriving him of "full use" of these body parts, (R. 2972-73), it is not clear to the Court the degree of limitation contemplated by the doctor.  More importantly, it is not my role to attempt to answer that question.  *See Chandler*, 667 F.3d at 359 (reviewing courts may not "impose their own factual determinations"); *Grant*, 989 F.3d at 1338 ("district courts have no fact-finding role in Social Security cases").  On remand, the ALJ may (or may not) determine that consideration of Dr. Sedacca's opinion warrants a change in Plaintiff's RFC, and perhaps one that indeed results in the preclusion of competitive work.  But for the Court to usurp the ALJ's role by mandating an award of benefits would be improper.  Therefore, the Court rejects Plaintiff's argument that consideration of Dr. Sedacca's opinion can lead to only one result, a ruling in his favor and payment of benefits.[3]

---

[3] Each party advances dubious arguments in support of his position regarding Dr. Sedacca's opinion, with the Commissioner minimizing ALJ Ryan's disregard of it based on its limited length compared to the size of the overall record and Plaintiff suggesting that the Commissioner's failure to explain the basis for the ALJ's oversight despite having notice of the need to articulate his consideration of all medical opinions somehow entitles him to an award of benefits. (Memo. in Supp. of Mot. to Remand, ECF No. 17, at 5; Resp. to Mot. to Remand, ECF No. 18, at 1, 3). However, the regulations provide no "*de minimis*" exception to the requirement that the ALJ explain his analysis of all medical opinions in the record. 20 C.F.R. § 416.927. On the other hand, Plaintiff is not entitled to a windfall of an award of benefits simply because the ALJ has, without justification, failed to consider all necessary evidence. Further, it is not dispositive whether, as the parties dispute, the ALJs have committed the same or different errors on remand. (Memo. in Supp. of Mot. to Remand, ECF No. 17, at 7; Resp. to Mot. to Remand, ECF No. 18, at 3). Rather, the question is whether Plaintiff, having shown excessive delay for

b.   **Mental Impairments**

Plaintiff contends that the opinion of treating psychologist, George Gazella, Psy.D., the only record opinion addressing his mental limitations, necessitates a remand for an award of benefits rather than for additional proceedings. (Pl.'s Br., ECF No. 14, at 14-21). This opinion, also signed off on by Dr. Branon, posited in relevant part that Plaintiff had poor or no ability to maintain attention and concentration and a fair ability to deal with the public and work stresses (but "good" ability to make all other occupational adjustments) and varying abilities to understand, remember, and carry out instructions that are simple (unlimited/very good), detailed (fair), and complex (poor/none). (R. 2639, 2642). Dr. Gazella further opined that although Plaintiff would not decompensate at work due to stress, he would miss three or more days per month due to his symptoms; he was significantly limited in his ability to complete a normal workday and work week without interruptions from his symptoms and to perform at a consistent pace without unreasonable rest periods; and he would frequently fail to complete tasks timely due to his limitations in concentration, persistence and maintaining pace. (R. 2641).

The ALJ accorded this opinion "little weight" because it was "not consistent[4] with the claimant's mental health treatment record, which shows very little treatment and generally unremarkable mental status exam findings." (R. 3133). He elaborated that Plaintiff's treatment

---

which he was not responsible, has also shown that "substantial evidence on the record as a whole indicates that [he] is disabled and entitled to benefits." *Gilliland*, 786 F.2d at 184.

[4] ALJ Ryan again claimed that the opinion was supported with only minimal explanation, "good reasoning," or objective medical evidence, and also noted that it was "obtained at the behest of the claimant's representative." (R. 3133). However, in light of the substantial evidence supporting his determination that the opinion was inconsistent with the remainder of Plaintiff's mental health record, the Court need not consider these additional reasons. (*See supra* n.2); *see also Alexander*, 817 F. App'x at 404; *Batson*, 359 F.3d at 1197; *Whitten*, 778 F. App'x at 796.

was limited to "intermittent" therapy and medication between April and November 2017, one additional visit in April 2018, and "minimal[ ]" treatment with Setraline during his 2019 to 2021 incarceration. (*Id.* (citations omitted)); *see also Morales*, 799 F. App'x at 676. He further explained that clinical findings during mental health examinations performed during this treatment returned unremarkable findings other than a depressed mood at times. (R. 3133 (citing Exs. 10F; 20F; 28F324, 331, 385, 400, 427, 442, 499; 29F89, 150, 165, 189, 201, 212, 224, 232, 313, 404)). Given this substantial evidence, ALJ Ryan was not required to credit the limitations set forth by Dr. Gazella in his opinion.

Nonetheless, Plaintiff claims that it would be improper to remand this matter for further proceedings, including a consultative mental examination, because Judge Rice already determined that ALJ Sacks should have ordered one since he had not otherwise found Plaintiff's mental impairments severe. (Resp. to Mot. to Remand, ECF No. 18, at 2 (citing R. 2288)). Plaintiff is incorrect. Pursuant to Plaintiff's argument before him, Judge Rice considered whether "the ALJ should have either found his impairments caused by *the December 2012 shooting* were severe enough to impair his functionality for at least 12 consecutive months or ordered a consultative medical examination that could have proven the impairments' severity." (R. 2288 (emphasis added)). He went on to discuss Plaintiff's resulting *physical* impairments stemming from the gunshot, including ALJ Sacks's refusal to order a consultative examination because he believed it would not help to determine how many daily breaks Plaintiff required due to his colostomy bag. (R. 2292-93). Similarly, Plaintiff complains that ALJ McCafferty also had the opportunity to order a consultative mental examination but "stubbornly" refused to do so. (Resp. to Mot. to Remand, ECF No. 18, at 2 (citing R. 2203)). However, although Plaintiff's frustration with the prior administrative proceedings is understandable, the fact remains that ALJ

McCafferty had not been directed to order a consultative mental examination, as she accurately stated. (R 2203-04). But given the need to further develop evidence of Plaintiff's mental impairments, this Court directs the ALJ upon remand to order a consultative mental examination.

## VI.   CONCLUSION

For the reasons set forth above, the Commissioner's motion to remand is **GRANTED**. Upon remand, the ALJ will evaluate Dr. Sedacca's opinion, order a consultative mental examination of Plaintiff, hold a new administrative hearing, further assess Plaintiff's RFC and issue another decision regarding whether Plaintiff is disabled or was disabled for any continuous period of 12 months during the alleged disability period. (*See* Resp. to Mot. to Remand, ECF No. 14, at 12-14); *see also* 42 U.S.C. §423(d)(1)(A).

BY THE COURT:

  /s/ Lynne A. Sitarski  
LYNNE A. SITARSKI  
United States Magistrate Judge